UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GLOBAL TECH LED, LLC, a
Florida limited liability
company,

    Plaintiff/Counter
    Defendant,

v.                      Case No: 2:15-cv-553-FtM-29CM

HILUMZ INTERNATIONAL CORP.,
a Georgia corporation,
HILUMZ, LLC, a Georgia
limited liability company,
and HILUMZ USA, LLC, a
Georgia limited liability
company,

    Defendants/Counter
    Claimant/Third Party
    Plaintiffs

JEFFREY J. NEWMAN, and GARY
K. MART,

    Third Party Defendants.

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on Plaintiffs' Motion to Dismiss Defendants' Second Amended Counterclaims and Third-Party Claims (Doc. #71) filed on July 11, 2016. Defendants filed a Response in Opposition (Doc. #75) on July 28, 2016. As set forth below, Plaintiffs' Motion is granted in part and denied in part.

**I.**

This case involves two business partners-turned-competitors in the retrofit LED lighting industry. On September 15, 2015, Plaintiff Global Tech LED, LLC (Global Tech) filed a one-count

Complaint (Doc. #1) against Defendants HiLumz International Corp., HiLumz, LLC, and HiLumz USA, LLC (collectively, Defendants) alleging direct and indirect patent infringement under 35 U.S.C. § 271 and seeking injunctive relief and money damages. Specifically, Plaintiffs accuse Defendants of "making, using, selling, or offering for sale" one or more retrofit LED lighting products that infringe United States Patent No. 9.091,424 (the '424 Patent), either literally or under the doctrine of equivalents.[1] (Doc. #1, ¶ 36.) Defendants are also alleged to have "induced infringement of claims of at least the '424 Patent by having one or more of its [sic] distributors and other entities use, sell or offer for sale the Accused Products and others substantially identical to the Accused Products with knowledge of the '424 Patent." (Id. ¶ 37.)

---

[1] According to the official patent Abstract, the invention encompassed by the '424 Patent is:

> A retrofit light emitting diode (LED) bulb [that] includes a screw connector, a bracket, and a housing. The screw connector is configured to be screwed into a receiving socket of an electric light fixture for supporting the retrofit light emitting diode (LED) bulb. The bracket is physically attached to the screw connector. The housing is rotatably coupled to the bracket. The housing includes one or more LED units for generating light and one or more electrically powered cooling devices to remove heat from the vicinity of the one or more LED units.

(Doc. #1-1, p. 2.) The Court held a "Markman" claims construction hearing on January 19, 2017 but has not yet issued an Order construing the meaning of the disputed patent claims.

On June 22, 2016, Defendants filed a Second Amended Counterclaim and Third Party Complaint (the Second Amended Counterclaim Complaint) (Doc. #63) alleging five claims: (1) false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125; (2) unfair competition; (3) violations of the Florida Deceptive and Unfair Trade Practices Act (the FDUTPA), Fla. Stat. § 501.201 et seq.; (4) trade libel; and (5) declaratory judgment as to patent (un)enforceability.[2] The first four counts are based on several statements (the False Ads) that were allegedly disseminated regarding Global Tech's patents, the parties' competing LED retrofit kits, and Defendants' business longevity, and which Defendants claim are false or misleading, specifically:

1. An announcement posted to Global Tech's website on or about September 24, 2015 prematurely asserting that Global Tech "has received a permanent injunction, rendering account and damages based on its newly-granted patent against HiLumz USA for infringement of its US patent 8,989,304 B2" and accusing Defendants of "stealing" and "copying" Plaintiffs' product ideas (The Press Release or False Ad 1) (Doc. #7-13).

2. A sentence in the Press Release incorrectly claiming that Global Tech "filed a lawsuit against HiLumz USA . . . for infringement of one of its patents entitled 'LED Light Bulb' (U.S. Patent No. 8,989,304[3])" (False Ad 2).

3. The Press Release's original URL (webpage browser address) reading: "globaltechled.com/2015/09/24/global-

---

[2] The third-party claims are pled against Gary K. Mart (Mart) and Jeffrey J. Newman (Newman), who are managing members of Global Tech and the inventors of the "screw base" retrofit LED lighting product for which Global Tech obtained the '424 Patent.

[3] U.S. Patent No. 8,989,304 (the '304 Patent) is the "parent" of the '424 Patent that Defendants' products allegedly infringe. The Complaint does not accuse Defendants of infringing the '304 Patent.

tech-led-receives-permanent-injunction-against-HiLumz-usa" (False Ad 3).

4. The same URL linking to an article called "Global Tech LED Announces Lawsuit for Patent Infringement" that was generated when Defendants performed a Google search on October 6, 2015 for the terms "global tech LED HiLumz" (False Ad 4).

5. Mart's statements to HiLumz distributors attending the 2015 World Energy Engineering Congress warning them to "be careful what products you sell" and asserting that "HiLumz will be out of business soon" (False Ad 5).

6. Statements made to "customers, sales representatives, competitors, and others" since the fall of 2012 that:

a. Hilumz's products infringe Global Tech's patents;

b. "HiLumz USA is no longer allowed to sell LED retrofit kits"; and

c. "Global Tech was preparing to file suit against HiLumz, and would also file suit against anyone who does business with HiLumz." (Collectively, False Ad 6.)

7. A statement on Newman's LinkedIn page claiming that the '304 Patent "issued on June 8, 2009."[4] (False Ad 7).

The declaratory judgment counterclaim is based on inequitable conduct allegedly committed during the prosecution of the '304 Patent, which Defendants contend renders the '424 Patent unenforceable through a theory of "infectious unenforceability."

Global Tech, Mart, and Newman (collectively referred to as Plaintiffs for purposes of this Motion) seek dismissal of all five counts. Dismissal is appropriate, Plaintiffs argue, because: (1) the statements at issue are not actionable under the Lanham Act;

---

[4] The '304 Patent was *filed* on June 8, 2009 but did not actually issue until March 17, 2015. (Doc. #71-2.)

(2) Defendants have not alleged a connection between dissemination of the False Ads and resultant consumer confusion, as required to state a claim for unfair competition; (3) Defendants do not have standing to assert a FDUTPA claim for damages against Plaintiffs, have failed to plead the existence of a "trade or commerce relationship," as the FDTUPA requires, and have not alleged "actual damages"; and (4) an infectious theory of inequitable conduct and the elements of a claim of inequitable conduct are insufficiently plead.[5]  The Court addresses each argument below.

## II.

"Counterclaims are held to the same pleading standards applied to complaints."  Hill v. Nagpal, No. 12-21495-CIV, 2013 WL 246746, at *1 (S.D. Fla. Jan. 22, 2013) (citing Manuel v. Convergys Corp., 430 F.3d 1132, 1141 (11th Cir. 2005)).  Any pleading stating a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to

---

[5] Plaintiffs also seek dismissal of Counterclaim Counts I-IV on the basis that Defendants have grouped all of the False Ads "into the same context for adjudication," in violation of "the rule discussed" in Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242 (11th Cir. 2002).  (Doc. #71, p. 3.) That case, however, neither imposes nor discusses a rule of pleading; the Eleventh Circuit simply points out that when a Lanham Act claim is based on multiple statements, the fact-finder must consider the specific context in which each was made when determining whether the Act was violated.  So where, as here, separate advertisements form the basis for a Lanham Act claim, the fact-finder cannot use both to piece together the elements of a successful claim, unless it is clear that the same consumer was concurrently exposed to each.  Id. at 1248 & n.4.

relief."[6]  Fed. R. Civ. P. 8(a)(2).  In evaluating a Rule 12(b)(6)

motion to dismiss a counterclaim for failing to comply with Rule

8(a), the Court must accept as true all factual allegations in the

counterclaim complaint and "construe them in the light most

favorable to the [counterclaim-]plaintiff."  Baloco ex rel. Tapia

v. Drummond Co., 640 F.3d 1338, 1345 (11th Cir. 2011).  However,

mere "[l]egal conclusions without adequate factual support are

entitled to no assumption of truth."  Mamani v. Berzain, 654 F.3d

1148, 1153 (11th Cir. 2011) (citations omitted).

By extension, "[a] motion to dismiss a counterclaim pursuant

to Federal Rule of Civil Procedure 12(b)(6) is [also] evaluated in

the same manner as a motion to dismiss a complaint."  Sticky

Holsters, Inc. v. Ace Case Mfg., LLC, No. 2:15-cv-648-FTM-29CM,

2016 WL 1436602, at *6 (M.D. Fla. Apr. 12, 2016) (quoting Geter v.

Galardi S. Enters., Inc., 43 F. Supp. 3d 1322, 1325 (S.D. Fla.

2014)).  Thus, to avoid dismissal under Rule 12(b)(6), each

counterclaim must contain sufficient factual allegations to "raise

a right to relief above the speculative level."  Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 555 (2007).  To do so requires "enough

facts to state a claim to relief that is plausible on its face."

---

[6] As the Court noted in its May 31, 2016 Opinion and Order (Doc.
#62) dismissing Defendants' original Counterclaims and Third-Party
Claims (Doc. #8), some courts have applied Rule 9(b)'s heightened
pleading requirements to determine the sufficiency of a Lanham Act
claim "grounded in fraud."  (Doc. #62, p. 4 n.1 (citations
omitted).)  Plaintiffs did not then, nor do they now, argue that
Rule 9(b)'s heightened pleading standard applies however, so the
Court applies Rule 8(a)'s "short and plain statement" requirement.

Id. at 570.  This plausibility pleading obligation demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555 (citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." (citation omitted)).  Instead, the counterclaim complaint must contain enough factual allegations as to the material elements of each claim to raise the plausible inference that those elements are satisfied.

### III.

### A.   False Advertising Under the Lanham Act (Count I)

Defendants accuse Plaintiffs of violating the Lanham Act by disseminating false or misleading injurious statements about Plaintiffs' products and patent rights and Defendants' business and products.  The Lanham Act serves to "protect persons engaged in commerce within the control of Congress against unfair competition" – that is, against "injuries to business reputation and present and future sales."  Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1389-90 (2014) (citation and internal alterations omitted).  As relevant here, the Lanham Act imposes liability on a person or entity that "in commercial

advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or another person's goods." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting 15 U.S.C. § 1125(a)). A plaintiff alleging a claim of false advertising in violation of Section 43(a) the Lanham Act must adequately plead, and ultimately prove, that:

> (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been — or is likely to be — injured as a result of the false advertising.

Id. (citations omitted). Moreover, if the advertisements forming the basis of the Lanham Act claim constitute "marketplace activity in support of [a] patent" - such as "statements about potential infringement of [a] patent" - the plaintiff must plead and prove that the statements were made "in bad faith," Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1353 (Fed. Cir. 1999), which "may encompass subjective as well as objective considerations." Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 897 (Fed. Cir. 1998).

As the statutory language indicates, Section 43(a) of the Lanham Act provides redress only for false or misleading statements that "occur in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). A statement "occurs in commercial advertising or promotion" if it: (1) is "commercial speech"; (2) was made (a) by

someone "in commercial competition with" the plaintiff and (b) "for the purpose of influencing consumers to buy defendant's goods or services"; and (3) was "disseminated sufficiently to the relevant purchasing public." Suntree Techs., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338, 1349 (11th Cir. 2012) (quoting Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994)). "Commercial speech consists of expression related largely or solely to the economic interests of the speaker and the audience[] . . . [and] encompasses not merely direct invitations to trade, but also communications designed to advance business interests, exclusive of beliefs and ideas." Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1204 (11th Cir. 1985) (citations omitted). "[R]elevant considerations [for determining if speech is commercial] include whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." Jordan v. Jewel Food Stores, Inc., 743 F.3d 509, 517 (7th Cir. 2014) (citation omitted).

Plaintiffs argue that Defendants' Lanham Act claim fails because the False Ads "do not amount to commercial advertising or promotion." (Doc. #71, pp. 2-5.) Plaintiffs contend further that False Ads 5 and 6 cannot support a Lanham Act claim because neither is "literally false" nor "affects interstate commerce." (Id. pp. 5-8.)

**1. Whether the False Ads "Occurred in Commercial Advertising or Promotion"**

In support of their argument that the False Ads did not occur in commercial advertising or promotion, Plaintiffs first contend that none of the False Ads are "commercial speech." Second, Plaintiffs argue that, even if the False Ads are "commercial speech," none was sufficiently disseminated to the relevant purchasing public.

**a. Commercial Speech**

According to Plaintiffs, the False Ads are not commercial speech because they reference only Plaintiffs' patents, not any "products," and because the statements were not economically motivated. As to the first argument, reference to a particular good or service is merely a "relevant consideration," indicative of "commercial speech"; it is neither required in all instances, nor alone sufficient. <u>Bolger v. Youngs Drug Prods. Corp.</u>, 463 U.S. 60, 66-68 & n.14 (1983); <u>see also</u> <u>Jordan</u>, 743 F.3d at 517.

But even were it required, the Court finds that False Ads 1, 2, 3, 5, and 6 do adequately reference "products." The Press Release (False Ad 1) (Doc. #7-13) specifically mentions Global Tech's "LED lighting products" and appears to twice hyperlink the word "products," presumably to permit the viewer to click on the word and redirect to the product page on Global Tech's website. <u>See</u> <u>Bolger</u>, 463 U.S. at 66 n.13 ("That a product is referred to generically does not[] . . . remove it from the realm of commercial

speech."); see also Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC, 814 F. Supp. 2d 1033, 1038 (S.D. Cal. 2011) ("Even if patent licenses do not constitute goods, the Press Release nonetheless promotes Weiland's goods. . . . The Press Release provides contact information and a website URL for viewers to 'learn more' and get 'more information' about Weiland products.").  False Ad 2 is a statement within the Press Release and False Ad 3 is the Press Release's original browser URL.  Each is, therefore, properly considered in conjunction with False Ad 1 and thus also adequately references Plaintiffs' products.  Johnson & Johnson, 299 F.3d at 1248 n.4.  False Ad 5 warns distributors to take care when determining which *products* to sell, in light of HiLumz's impending demise, and False Ad 6 asserts that Defendants have infringed Plaintiffs' "LED Light Bulb" patent and thus may no longer sell HiLumz retrofit *products*.

Defendants have also sufficiently alleged that False Ads 1, 2, 3, 5, and 6 were economically motivated, that is, were "designed to advance [Plaintiffs'] business interests." Kleiner, 751 F.2d at 1204.  The Press Release (False Ads 1-3) welcomes Hilumz distributors "caught in the middle" with "open arms" to sell Global Tech's products instead.  The statements about Plaintiffs' patent rights and the effect of those rights on Hilumz's business (False Ads 5 and 6) similarly "'amount to speech of a commercial bent,' as opposed to social or political speech," and appear "intended to influence customers to buy [Global Tech's] products rather than

[HiLumz's] products." VG Innovations, Inc. v. Minsurg Corp., No. 8:10-CV-1726-T-33MAP, 2011 WL 1466181, at *5-6 (M.D. Fla. Apr. 18, 2011) (quoting Kleiner, 751 F.2d at 1204).

However, the Court does agree that False Ad 7 (a statement posted on Newman's personal LinkedIn profile page incorrectly asserting that the parent '304 Patent "issued on June 8, 2009") is not "commercial speech." LinkedIn is an online social platform allowing individuals to exhibit their professional experience, interests, and skills, primarily for business networking purposes. That Newman sought merely to showcase his contribution to the world of patentable technology and temporarily confused the date the '304 Patent application was filed with the date it issued is a reasonable inference to draw from the publication of False Ad 7; that he sought to drive LED retrofit kit business to Global Tech is not.[7]  False Ad 7 is thus dismissed as a basis for Count I.

### b.   Adequate Dissemination

Plaintiffs also seek to dismiss each of the False Ads for insufficient dissemination to the relevant purchasing public. (Doc. #71, p. 2.)  The Court mostly disagrees.  The Second Amended Counterclaim Complaint alleges that Global Tech published the Press Release (False Ads 1-3) "to the entire world via its internet website."  (Doc. #63, ¶ 15.)  That allegation is sufficient at

---

[7] Because Defendants have not sufficiently pled that False Ad 7 was "economically motivated," it is unnecessary to assess whether Plaintiffs are correct that a patent number is not a "product" reference for purposes of stating a Lanham Act claim.

this stage.[8]  See, e.g., 1524948 Alberta Ltd. v. Lee, No. 1:10-CV-02735-RWS, 2011 WL 2899385, at *5 (N.D. Ga. July 15, 2011); Star-Brite Distrib., Inc. v. Kop-Coat, Inc., No. 09-60812-CIV, 2010 WL 750353, at *3 (S.D. Fla. Mar. 4, 2010).  So too do the allegations that False Ad 5 was disseminated to distributors of HiLumz products attending the World Energy Engineering Congress (Doc. #63, ¶ 37), and that False Ad 6 was made to "customers, sales representatives, competitors, and others" (id. ¶ 39), sufficiently plead adequate dissemination of those statements "to the relevant purchasing public."  See Merck Eprova AG v. Gnosis S.p.A., 901 F. Supp. 2d 436, 451 (S.D.N.Y. 2012) (granting summary judgment for plaintiff alleging harm caused by distribution of literally false product specification sheets that were "widely distributed" to trade show attendees, including potential customers), aff'd, 760 F.3d 247 (2d Cir. 2014).

---

[8] The Court is aware of the affidavit testimony of Karhrman Ziegenbein (Doc. #29), filed in conjunction with Plaintiffs' response opposing (Doc. #25) a different motion.  Mr. Ziegenbein is an "expert in the field of Social Media Discovery, Web Collection, and Digital Evidence Preservation" whom Plaintiffs hired to review the Google Analytics for the Press Release and to "provide an independent unbiased assessment of the page activity." (Id. ¶¶ 3, 4.)  According to Mr. Ziegenbein, the number of page views was minimal, and the number of "unique" views (those by first-time viewers) even lower. (Id. ¶¶ 15-20.)  Even assuming Mr. Ziegenbein's testimony undermines a finding of sufficient dissemination of the Press Release, the Court may not take as true the allegations in that declaration without converting Plaintiffs' Motion to Dismiss into one for summary judgment.  Cyril v. Neighborhood P'ship II Hous. Dev. Fund, Inc., 124 F. App'x 26, 27 n.2 (2d Cir. 2005) (per curiam); In re Olympia Holding Corp., 68 F.3d 1304, 1306 (11th Cir. 1995).  The Court declines to do so.

The Court does agree, however, that Defendants have failed to plead sufficient dissemination of False Ad 4.   The Second Amended Counterclaim Complaint alleges that "when internet users searched on the internet for 'global tech LED hilumz'" at least as late as on October 6, 2015, a Google search result appeared containing the same URL that is the subject of False Ad 3, which incorrectly stated that Global Tech had already received a permanent injunction against HiLumz.   (Doc. #63, ¶ 23.)   Unlike with False Ad 3, which is directly linked to the Press Release that neither party disputes had at least some page views, the Court cannot gratuitously infer that any netizen beside Defendants ever actually googled "global tech LED hilumz" during the relevant time period.   See Johnson & Johnson, 299 F.3d 1248 & n.4 (court must consider the specific context in which each statement was made in determining whether Lanham Act was violated).   Consequently, False Ad 4 is also dismissed as a basis for Defendants' Lanham Act counterclaim.

### 2.   Whether False Ads 5 and 6 are "False or Misleading" and "Affect Interstate Commerce"

Plaintiffs also contend that False Ads 5 and 6 should be dismissed because neither is "literally false" nor "affects interstate commerce."   "[L]iterally false" statements and statements that are "literally true, but misleading" are actionable under the Lanham Act, id. at 1247, whereas "[s]tatements of opinion are generally not actionable." Osmose, Inc. v. Viance, LLC, 612 F.3d 1298, 1311 (11th Cir. 2010).   According to

Plaintiffs, any statements regarding HiLumz's impending demise, patent infringement, and inability to sell retrofit kits are "non-actionable opinion" (Doc. #71, p. 7), which "no reasonable consumer would take as implying a factual basis." (Id. p. 8.)

The Court agrees that False Ad 5 - Mart's alleged statement warning HiLumz distributors to "be careful" about selling HiLumz products because HiLumz was "going out of business" - constitutes non-verifiable "prediction or opinion about the future of [Hilumz], and consequently, is not actionable as a false or misleading statement of fact under the Lanham Act." Medison Am., Inc. v. Preferred Med. Sys., LLC, 548 F. Supp. 2d 567, 579 (W.D. Tenn. 2007), aff'd, 357 F. App'x 656 (6th Cir. 2009); see also Duty Free Americas, Inc. v. Estee Lauder Companies, Inc., No. 12-60741-CIV, 2014 WL 1329359, at *18 (S.D. Fla. Mar. 31, 2014), aff'd, 797 F.3d 1248 (11th Cir. 2015) (business projections forming the basis for the plaintiff's Lanham Act claim were mere "predictions that d[id] not lend themselves to empirical verification and [were] thus opinions" not actionable under the Act); cf. Next Century Commc'ns Corp. v. Ellis, 318 F.3d 1023, 1028 (11th Cir. 2003) (concluding that a statement lauding the company's "strong performance" was not actionable fraud because such characterization was "not the sort of empirically verifiable statement that [could] be affirmatively disproven").

The same cannot be said for at least the first two statements comprising False Ad 6.[9]   Plaintiffs argue that the statements asserting that Defendants' LED retrofit kits infringe Global Tech's patents and that Defendants are therefore no longer allowed to sell those products embody only a firm opinion.   Maybe so, but each statement "fairly implies a factual basis" and is thus properly treated as a statement of fact, despite being "framed as an opinion."   Duty Free Americas, Inc. v. Estee Lauder Companies, Inc., 797 F.3d 1248, 1277 (11th Cir. 2015) (quotation and internal alteration omitted).   Indeed, the outcome of Plaintiffs' infringement claim will reveal whether the statements are true or false, and thus the statements are considered "empirically verifiable" statements of fact.[10]   Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 496 (5th Cir. 2000) (observing that for Lanham Act purposes, "[a] statement of fact is one that (1) admits of being adjudged true or false in a way that (2) admits of

[9] The statement that "Global Tech was preparing to file suit against HiLumz, and would also file suit against anyone who does business with HiLumz" has by all accounts, proved *true* and so is likely not actionable under the Lanham Act.   (See Doc. #63, p. 7 n.1.)

[10] Moreover, the Second Amended Counterclaim Complaint alleges that Plaintiffs have been making these statements since as early as fall of 2012, years before Global Tech actually obtained the patent whose infringement is alleged in this lawsuit.   Given that "[a] patent application cannot be infringed," the falsity of these statements may be readily ascertainable.   Abbey v. Mercedes Benz of N. Am., Inc., 138 F. App'x 304, 307 (Fed. Cir. 2005).

empirical verification" (quotation omitted)); cf. Ellis, 318 F.3d at 1028.

Plaintiffs argue that False Ad 6 should be dismissed for the additional reason that the statements "neither travelled in any interstate channels, nor were they of the nature to have any effect on interstate commerce." (Doc. #71, p. 7.) The relevant question in this Circuit, however, is not whether a statement itself affected interstate commerce, but whether "the misrepresented product or service affects interstate commerce."[11] Hickson, 357 F.3d at 1260; see also Third Party Verification, Inc. v. Signaturelink, Inc., 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007) ("To state a claim for false advertising under the federal Lanham Act, 15 U.S.C. § 1125(a), the party must allege[] . . . the defendant's advertised products traveled in interstate commerce . . . ." (citing Hickson, 357 F.3d at 1260-61; Warner, 204 F.3d at 91-92)). The first paragraph of the Second Amended Counterclaim Complaint alleges that "HiLumz provides energy efficient lighting products and services to companies across the United States and around the world." (Doc. #63, ¶ 1.) Because HiLumz's products include LED retrofit kits, which are the product mentioned in False

---

[11] Compare Warner-Lambert Co. v. Breathasure, Inc., 204 F.3d 87, 91–92 (3d Cir. 2000) (Lanham Act plaintiff must show "*the advertised goods* traveled in interstate commerce" (emphasis added)), with Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 819 (7th Cir. 1999) (Lanham Act plaintiff must prove "defendant caused *its false statement* to enter interstate commerce" (emphasis added)).

Ad 6, the Court finds that the "affect interstate commerce" requirement has been adequately alleged.[12]

In sum, although the Court agrees that False Ads 4, 5, and 7 cannot serve as bases for Defendants' Lanham Act counterclaim, none of the arguments Plaintiffs have raised support dismissal of False Ads 1, 2, 3, and 6. Defendants' request to dismiss Counterclaim Count I is, therefore, denied.

## B.   Unfair Competition Under Florida Law (Count II)

Counterclaim Count II asserts a common-law claim of unfair competition. Unfair competition is a doctrine grounded in "fairness, decency and common honesty." Sentco, Inc. v. McCulloh, 68 So. 2d 577, 580 (Fla. 1953). "To state a claim for unfair competition under Florida common law, [a] claimant must allege (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion." Whitney Info. Network, Inc. v. Gagnon, 353 F. Supp. 2d 1208, 1212 (M.D. Fla. 2005) (citation omitted); Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc., 785 F.2d 897, 914 (11th Cir. 1986) ("Florida law requires that [a

---

[12] Plaintiffs also contend in passing that consumer deception has not been sufficiently alleged as to False Ad 6. (Doc. #71, p. 9.) The Court again disagrees. Not only does Count I aver that the "statements have deceived, and have a tendency to further deceive, a substantial segment of potential customers" (Doc. #63, ¶ 59), Paragraph 33 alleges that a HiLumz reseller requested reassurance that Defendants would "continue to be in business," after being told by "Mart or one of his accomplices" that "HiLumz was no longer allowed to sell LED retrofit kits." Further, Paragraph 46 alleges that "some of Hilumz'[s] customers have specifically informed HiLumz that they will not continue to purchase Hilumz'[s] products out of fear of being sued by Defendants."

plaintiff alleging unfair competition] establish deceptive or
fraudulent conduct of a competitor and likelihood of customer
confusion." (citing Stagg Shop of Miami, Inc. v. Moss, 120 So. 2d
39, 41 (Fla. 2d DCA 1960))).

In moving to dismiss Count II, Plaintiffs point primarily to
this Court's previous observation that "the success of a
plaintiff's state unfair competition and FDUTPA claims is tied to
the federal Lanham Act claim[] for . . . false advertising." (Doc.
#62, p. 8 (internal alterations and citations omitted).) Since
the Court is not dismissing Defendants' Lanham Act claim as to
False Ads 1, 2, 3, and 6, however, dismissal of the unfair
competition claim is not warranted on that basis.

Plaintiffs' only other argument for dismissal is that
Defendants have not adequately pled a causal connection between
the False Ads and resultant consumer confusion or other harm.
(Doc. #71, p. 10.) Even if Defendants are required to plead such
causation at this stage, the Court disagrees that they have failed
to do so. Paragraph 43, which is incorporated into Count II via
Paragraph 66, alleges that the False Ads "proximately caused . .
. injury to HiLumz by diverting sales from HiLumz to [Global
Tech]." Paragraph 47, also incorporated into Count II, avers that
customers "have not purchased products from HiLumz, or have not
purchased the same volume of products, because they were misled by
[Plaintiffs'] False Advertisements." Accordingly, Plaintiffs'
request for dismissal of Count II is denied.

**C.   Florida Deceptive and Unfair Trade Practices Act (Count III)**

Counterclaim Count III is based on Defendants' contention that dissemination of the False Ads violated the Florida Deceptive and Unfair Trade Practices Act.  The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Molina v. Aurora Loan Servs., LLC, 635 F. App'x 618, 626 (11th Cir. 2015) (per curiam) (quoting Fla. Stat. § 501.204(1)).  Stating a claim under the FDUTPA requires the plaintiff to "allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." Dolphin LLC v. WCI Communities, Inc., 715 F.3d 1243, 1250 (11th Cir. 2013) (citing Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. 2d DCA 2006)); Wright v. Emory, 41 So. 3d 290, 292 (Fla. 4th DCA 2010) (quoting Rollins, 951 So.2d at 869).

Paragraph 67 of the Second Amended Counterclaim Complaint accuses Plaintiffs of engaging in four specific "deceptive and unfair trade practices," and Paragraph 68 avers that such actions "proximately caused" Defendants' "actual economic damages." Plaintiffs argue that the FDUTPA counterclaim should nevertheless be dismissed because (1) Defendants are "competitors," not "consumers," (2) the False Ads did not occur in the context of a "trade or commerce relationship," and (3) Defendants have not sufficiently pled "actual damages."  The Court disagrees with each contention.

### 1.   Standing to Sue

According to Plaintiffs, because Defendants are "a manufacturer, seller, and distributor of LED lighting and retrofit lamps," they are not "consumers" and thus "fall outside of the purview of FDUTPA." (Doc. #71, p. 10.)  Essentially, Plaintiffs are claiming Defendants lack standing to pursue a FDUTPA claim as Plaintiffs' "competitors" in the retrofit LED lighting industry.

It is true that the Eleventh Circuit, construing a prior version of the FDUTPA, concluded that the statute "[did] not apply to suits between competitors."  M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1494 (11th Cir. 1990).  But, in that version of the statute, the damages provision (Fla. Stat. 501.211(2)) allowed only "consumers" to seek damages, which Florida courts interpreted as preventing suits for money damages by those currently or previously engaged in the same business as the defendant.  U.S. Fin. Grp., Inc. v. Horizon Mgmt., Inc., 476 So. 2d 771, 772 (Fla. 3d DCA 1985) (per curiam); Darrell Swanson Consol. Servs. v. Davis, 433 So. 2d 651, 652 (Fla. 1st DCA 1983).

In the 2001 version of the statute, the word "consumer" in Section 501.211(2) was replaced with the word "person."  See Furmanite Am., Inc. v. T.D. Williamson, Inc., 506 F. Supp. 2d 1134, 1146 (M.D. Fla. 2007).  This change has led numerous courts – including this Court and at least two different Florida appellate courts – to conclude that the legislature intended to allow competitors to seek damages under the FDUTPA.  E.g., e-ventures

Worldwide, LLC v. Google, Inc., 188 F. Supp. 3d 1265, 1276 (M.D. Fla. 2016) (subsequent case history omitted); Bailey v. St. Louis, 196 So. 3d 375, 383 (Fla. 2d DCA 2016); Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc., 169 So. 3d 164, 169 (Fla. 4th DCA 2015). Accordingly, the Court finds that Defendants' status as Plaintiffs' "competitors" does not prevent Defendants from maintaining a claim for damages under the FDUTPA.[13]

### 2.   Trade or Commerce "Relationship"

Plaintiffs also argue that the Second Amended Counterclaim Complaint fails to adequately allege that the deceptive or unfair behavior of which Plaintiffs are accused occurred "in the conduct of any trade or commerce," as required under Fla. Stat. 501.204(1). According to Plaintiffs, because no "trade or commerce relationship" existed between Plaintiffs and Defendants at the time the statements comprising the False Ads were made, the FDUTPA counterclaim should be dismissed. (Doc. #71, pp. 11-12 (citing

---

[13] Even if Defendants could not recover damages under the current version of the FDUTPA, they would still have standing to maintain their counterclaim, since they also request injunctive relief (see Doc. #63, p. 30). The FDUTPA allows "anyone aggrieved by a violation of [the Act to] bring an action to obtain a declaratory judgment . . . and to enjoin [the accused]," Fla. Stat. § 501.211(1), and Defendants' allegations of commercial and reputational harm show that Defendants may be "aggrieved." Five for Entm't S.A. v. Rodriguez, 877 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012); Ahearn v. Mayo Clinic, 180 So. 3d 165, 172 (Fla. 1st DCA 2015). Claims for equitable relief are not, and have never been, subject to the "competitor" exclusion. Del Monte Fresh Produce Co. v. Dole Food Co., 136 F. Supp. 2d 1271, 1295 (S.D. Fla. 2001); Bailey, 196 So. 3d at 382 (collecting cases).

Williams v. Nationwide Credit, Inc. 890 F. Supp. 2d 1319 (S.D. Fla. 2012)).)

The FDUTPA broadly defines "trade or commerce," in relevant part, as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service," Fla. Stat. § 501.203(8). There is no mention of a "relationship" requirement. As such, the Court declines to narrow the statutory definition by requiring that a trade or commerce relationship have existed between a plaintiff and a defendant before the defendant may be held liable under the FDUTPA.

It is true that the Williams case Plaintiffs cite found that the defendant "was not engaged in trade or commerce as to Plaintiff" and, absent such "'trade or commerce' relationship," the district court dismissed the FDUTPA claim. 890 F. Supp. 2d at 1322. However, rather than suggest a stand-alone "trade or commerce relationship" requirement under the FDUTPA, this holding reflects the creditor-debtor context in which the FDUTPA claim arose in that case. Since the only conduct forming the basis of the plaintiff's FDUTPA claim was the defendant's attempt to collect on the plaintiff's outstanding debt, and because, in turn, debt-collection attempts "are not trade or commerce," the plaintiff was unable to establish that the FDUTPA had been violated.[14] Id.

---

[14] Other cases discussing a "trade or commerce relationship" also involve attempts to collect on consumer debt. State v. Beach Blvd Auto. Inc., 139 So. 3d 380, 392 (Fla. 1st DCA 2014); Baker v. Baptist Hosp., Inc., 115 So. 3d 1123, 1125 (Fla. 1st DCA 2013).

Here, in contrast, the existence (or lack thereof) of a trade or commerce "relationship" between Plaintiffs and Defendants is immaterial.  As discussed previously, Defendants have adequately alleged that False Ads 1, 2, 3, and 6 constitute commercial speech and affect interstate commerce because the statements therein promote Global Tech products and malign LED HiLumz retrofit kits. That is sufficient to satisfy the "trade or commerce" requirement of Defendants' FDUTPA claim at this stage.  See Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of Saint John of Jerusalem, Knights of Malta, Ecumenical Order, 702 F.3d 1279, 1296 (11th Cir. 2012) ("The success of state unfair competition and FDUTPA claims is tied to the federal Lanham Act claims for infringement and false advertising." (citing Natural Answers, Inc. v. Smithkline Beecham Corp., 529 F.3d 1325, 1333 (11th Cir. 2008))).

### 3.  "Actual Damages"

One who "has suffered a loss" caused by conduct the FDTUPA proscribes may recover "actual damages."  Fla. Stat. § 501.211(2). Plaintiffs argue that because Defendants seek to recover only for lost profits, they have not "sufficiently support[ed] any plausible claim for actual damages."  (Doc. #71, pp. 12-13.)

This Court previously observed that, "under FDUTPA, 'actual damages' do not include consequential damages, precluding recovery of future lost profits."  (Doc. #62, p. 9 (emphasis added) (quoting

Siever v. BWGaskets, Inc., 669 F. Supp. 2d 1286, 1294 (M.D. Fla. 2009) and citing Rodriguez v. Recovery Performance & Marine, LLC, 38 So. 3d 178, 180 (Fla. 3d DCA 2010)).)   However, the Second Amended Counterclaim Complaint avers that the False Ads have *already* diverted sales from Defendants to Plaintiffs, (Doc. #63, ¶¶ 43, 47), a contention further supported by the allegation that "some of Hilumz'[s] customers have specifically informed HiLumz that they will not continue to purchase Hilumz'[s] products" because of the information conveyed in the False Ads. (Id. ¶ 46.) In other words, Defendants' claim for damages seems to be based, at least in part, on *past* lost profits.   Past lost profits, in turn, appear to be a proper form of "actual damages."[15]   Factory Direct Tires Inc. v. Cooper Tire & Rubber Co., No. 3:11-cv-255-RV/EMT, 2011 WL 13117118, at *7 (N.D. Fla. Oct. 24, 2011) ("[Plaintiff] is not seeking future lost profits, but rather the lost profits that it has already suffered. It would appear that such damages constitute 'actual damages' under FDUTPA."); see also Sun Prot. Factory, Inc. v. Tender Corp., No. 6:04-cv-732-ORL-19KRS, 2005 WL 2484710, at *14 (M.D. Fla. Oct. 7, 2005) (denying a motion to dismiss a FDUTPA claim in a trademark infringement

---

[15] Even if the Court is incorrect, dismissal is still inappropriate, since Defendants also request injunctive relief. Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc., 123 So. 3d 1149, 1152 (Fla. 5th DCA 2012).   Moreover, if Defendants succeed in obtaining an injunction, they may also be entitled to recover attorneys' fees under Fla. Stat. § 501.2105, irrespective of whether they have suffered "actual damages."   Airflo A/C & Heating, Inc. v. Pagan, 929 So. 2d 739, 742 (Fla. 2d DCA 2006).

case since "lost business and lost profits" can fall within the Act's requirement that the plaintiff *have* "suffered a loss"); cf. Siever, 669 F. Supp. 2d at 1294 ("Where a product is rendered valueless by [the conduct that violated the FDUTPA], the [product's] purchase price is an appropriate measure of damages."). For all of the reasons just discussed, Plaintiffs' motion to dismiss Count III is denied.

## D.   Trade Libel (Count IV)

To state a claim for trade libel under Florida law, a plaintiff must allege (1) that one who published or communicated a falsehood about the plaintiff (a) knew, or reasonably should have known, that (b) the falsehood would induce others not to deal with the plaintiff, and (2) that the falsehood did, in fact, "play a material and substantial part in inducing others not to deal with the plaintiff," (3) thereby causing the plaintiff to suffer "special damages." Border Collie Rescue, Inc. v. Ryan, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006) (citation omitted). Plaintiffs have raised no substantive challenge to the trade libel counterclaim,[16] but do argue that "Defendants should at least be required to file another amended counterclaim to separately delineate how each False Advertisement constitutes trade libel."

---

[16] The Court has doubts about whether the Second Amended Counterclaim Complaint adequately alleges "special damages." See, e.g., Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 388 (Fla. 4th DCA 1999).

(Doc. #71, p. 14.) As previously discussed, the Court does not believe such a filing is either necessary or required.

**E.  Inequitable Conduct and Patent Unenforceability (Count V)**

Finally, Defendants request a declaration that the '424 Patent they are accused of infringing is unenforceable due to "inequitable conduct" allegedly committed during the prosecution of the '304 Patent – the "parent" of the '424 patent. Defendants' two theories of inequitable conduct are both based on the alleged failure of Mart, Newman, and their various patent attorneys (collectively, the Patent Prosecutors) to disclose to the United States Patent and Trademark Office (PTO) several material prior art references of which the Patent Prosecutors had been previously made aware when prosecuting a different Global Tech patent (United States Patent No. 8,246,202). Although these omissions allegedly occurred during the prosecution of the '304 Patent, which is not a part of this lawsuit,[17] Defendants contend that a declaration of unenforceability of the related, in-suit '424 Patent is nevertheless appropriate because such inequitable conduct "infected" the '424 Patent. (Doc. #75, pp. 11–12.)

"[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). The word "may" is key. It is well

---

[17] Global Tech has not elsewhere sued Defendants for infringing the '304 Patent. (Doc. #63, ¶ 17.)

established that "the declaratory judgment statute is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Green v. Mansour, 474 U.S. 64, 71 (1985); see also Wilton v. Seven Falls Co., 515 U.S. 277, 289– 90 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."). In other words, the Declaratory Judgment Act "gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005) (citing Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942)).

A declaration as to patent rights requires "declaratory justiciability." Capo, Inc. v. Dioptics Med. Prods., Inc., 387 F.3d 1352, 1355 (Fed. Cir. 2004). Declaratory justiciability, in turn, "requires both (1) a threat or other action by the patentee whereby the declaratory plaintiff has a reasonable apprehension that he will be sued for infringement, and (2) activity by the declaratory plaintiff that constitutes the alleged infringement or active preparation to conduct such activity." Id. (citing Jervis B. Webb Co. v. S. Sys., Inc., 742 F.2d 1388, 1398-99 (Fed. Cir. 1984)). The Court applies an objective standard, which "focuses on whether the patentee manifested the intention to enforce the patent, and would be reasonably expected to enforce the patent against the declaratory plaintiff." Id (citing Indium Corp. v.

Semi-Alloys, Inc._, 781 F.2d 879, 883 (Fed. Cir. 1985)). "When these criteria are met the declaratory action should proceed." Id. (citing Arrowhead Indus. Water Inc. v. Ecolochem, Inc._, 846 F.2d 731, 736 (Fed. Cir. 1988) (quoted language omitted)). Nonetheless, "[t]he district court retains appropriate discretion to decline to accept a declaratory action," id. (Wilton v. Seven Falls Co._, 515 U.S. 277, 290 (1995), as long as there exist "well-founded reasons" for declining.  Id. (citing Pub. Affairs Assocs., Inc. v. Rickover_, 369 U.S. 111, 112 (1962)).

In essence, Defendants seek to obtain an unofficial declaration of unenforceability as to a patent not otherwise before the Court, and then use that declaration as the predicate for having the in-suit '424 Patent Defendants are accused of infringing declared legally unenforceable.  The Court's research has revealed no case in which an in-suit patent was declared unenforceable based on inequitable conduct relating to the procurement of a different patent that is out-of-suit.  Accordingly, and because the declaratory justiciability as to the '304 Patent is unestablished, the Court deems it appropriate to decline to exercise its discretionary jurisdiction over Counterclaim Count V at this time.

Additionally, the Court finds that the declaratory judgment counterclaim, as currently pled, fails to comply with the requirements set forth in Exergen Corp. v. Wal-Mart Stores, Inc._, 575 F.3d 1312 (Fed. Cir. 2009), and Therasense, Inc. v. Becton, Dickinson & Co._, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc),

as well as <u>Cordis Corp. v. Bos. Sci. Corp.</u>, 188 F. App'x 984, 988 (Fed. Cir. 2006).  Among other deficiencies, Defendants i) improperly rest their theory of "infectious unenforceability" on nothing more than the parent-child relationship between the '304 Patent and the '424 Patent, ii) have not pled facts from which the court may reasonably infer that non-disclosure of the prior art references was "but-for material" to the PTO, and iii) failed to allege facts adequately supporting the scienter requirement.

Counterclaim Count V must, therefore, be dismissed.  As this is the first dismissal of that counterclaim, the Court will afford Defendants leave to replead to state a proper cause of action.

Accordingly, it is hereby

**ORDERED:**

1.   Plaintiffs' Motion to Dismiss Counterclaims and Third-Party Claims (Doc. #71) is **GRANTED in part** and **DENIED in part.**

2.   The Motion to Dismiss is **denied** as to Counterclaim Count I, however, False Ads 4, 5, and 7 are **dismissed as bases for the claim**.  The Motion is also **denied** as to Counts II, III, and IV.

3.   Counterclaim Count V is dismissed with leave to amend within **fourteen (14) days of the date of this Order**.

**DONE and ORDERED** at Fort Myers, Florida, this 14th day of February, 2017.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record